UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------x
DARIAN TRENT, SR.,

                        Plaintiff,

        -against-                          <u>MEMORANDUM & ORDER</u>
                                           08-CV-3481(JS)(AKT)
TOWN OF BROOKHAVEN,

                        Defendant.
----------------------------------------x
APPEARANCES
For Plaintiff:          Darian Trent, Sr., <u>pro</u> <u>se</u>
                        #72291-053
                        Elkton Federal Correctional Institution
                        P.O. Box 10
                        Lisbon, OH 44432


For Defendant:          David M. Cohen, Esq.
                        Cooper, Sapir & Cohen, P.C.
                        560 Broadhollow Road, Suite 210
                        Melville, NY 11747


SEYBERT, District Judge:

        Currently pending before the Court is Defendant Town

of Brookhaven's ("Defendant" or "Town") motion for summary

judgment.   For the following reasons, Defendant's motion is

GRANTED.

<u>BACKGROUND</u>[1]

---

[1] The following material facts are drawn from the parties' Local
Civil Rule 56.1 Statements and their evidence in support.  As
explained in Defendant's motion for a pre-motion conference
(Docket Entry 141), Defendant first served its 56.1 Statement
(Def.'s 56.1 Stmt., Docket Entry 149-6) and Plaintiff responded
(Pl.'s Resp. to Def.'s 56.1 Stmt., Docket Entry 149-12).
Magistrate Judge A. Kathleen Tomlinson then allowed Plaintiff to
submit an Amended 56.1 Statement (Pl.'s Am. 56.1 Stmt., Docket
Entry 149-10) and his own additional 56.1 Statement (Pl.'s Add'l

1

A. <u>Factual Background</u>

<u>Pro</u> <u>se</u> Plaintiff Darian Trent, Sr. ("Plaintiff") commenced this action against Defendant alleging that he was discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e <u>et</u> <u>seq.</u> ("Title VII") and the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12112-12117 ("ADA").

On February 22, 2005, Plaintiff, an African-American male, began his employment with Defendant as a part-time laborer in its Department of Waste Management. (Def.'s 56.1 Stmt. ¶¶ 1-2; Pl.'s Resp. to Def.'s 56.1 Stmt. ¶¶ 1-2.) Plaintiff's brother, Andrew Trent, also worked for Defendant as a part-time employee, and was made a full-time employee approximately two years later. (Def.'s 56.1 Stmt. ¶ 3; Pl.'s Resp. to Def.'s 56.1 Stmt. ¶ 3.)

Plaintiff's initial employment history is relatively uneventful until Plaintiff sustained a work-related injury in January 2006. (Def.'s 56.1 Stmt. ¶ 10.) As a result, he was out of work and received worker's compensation benefits for

_____

56.1 Stmt., Docket Entry 149-8). Thereafter, Defendant filed a Counterstatement to Plaintiff's 56.1 Additional Statement (Def.'s Counterstmt. to Pl.'s Add'l 56.1 Stmt., Docket Entry 149-9) and a Counterstatement to Plaintiff's Amended 56.1 Statement (Def.'s Counterstmt. to Pl.'s Am. 56.1 Stmt., Docket Entry 149-11). The Court has synthesized these various documents in formulating a discussion of the factual background of this case. Any relevant factual disputes are noted.

approximately four or five months. (Def.'s 56.1 Stmt. ¶ 10.) According to Defendant, Plaintiff returned to work without any adverse action. (Def.'s 56.1 Stmt. ¶ 10.) Plaintiff disagrees and believes that Defendant began to question Plaintiff's attendance and timeliness after his leave. (Pl.'s Resp. to Def.'s 56.1 Stmt. ¶ 10.)

On June 7, 2006, Ed Hubbard, the Town's Environmental Facilities Manager, met with Plaintiff to discuss lateness and attendance issues that Plaintiff had. (Def.'s 56.1 Stmt. ¶ 5; Pl.'s Resp. to Def.'s 56.1 Stmt. ¶ 5.) Two months later, on or about August 8, 2006, Plaintiff and Mr. Hubbard met again. (Def.'s 56.1 Stmt. ¶ 6; Pl.'s Resp. to Def.'s 56.1 Stmt. ¶ 6.) Mr. Hubbard informed Plaintiff that his attendance and tardiness record would jeopardize his chances of becoming a full-time employee as well as his continued employment in general. (Def.'s 56.1 Stmt. ¶ 7; Pl.'s Resp. to Def.'s 56.1 Stmt. ¶ 7.) Plaintiff admits that additional roofing and other side jobs resulted in attendance issues. (Pl.'s Resp. to 56.1 Stmt. ¶ 9.)

According to Defendant, Plaintiff's record did not improve, and on December 19, 2006, Defendant issued to Plaintiff a written counseling memorandum, which Plaintiff signed. (Def.'s 56.1 Stmt. ¶ 8; Pl.'s Resp. to Def.'s 56.1 Stmt. ¶ 8.) The statement advised Plaintiff that future latenesses or

absences could result in his termination.  (Def.'s 56.1 Stmt. ¶ 8.)

On March 27, 2007, Plaintiff left his work assignment for at least forty-five minutes in order to deliver a letter to the Office of the Supervisor in which he requested full-time employment.  (Def.'s 56.1 Stmt. ¶¶ 12-13; Pl.'s Resp. to Def.'s 56.1 Stmt. ¶¶ 12-13.)  Three days later, Plaintiff again left his assignment to visit the Office of the Supervisor.  (Def.'s 56.1 Stmt. ¶ 14; Pl.'s Resp. to Def.'s 56.1 Stmt. ¶ 14.) Plaintiff did not have permission to leave on either occasion. (Def.'s 56.1 Stmt. ¶¶ 12, 15.)

On April 4, 2007, Mr. Hubbard prepared a request to the Office of the Supervisor for the termination of Plaintiff's employment due to Plaintiff's absences and latenesses.  (Def.'s 56.1 Stmt. ¶ 18.)  Thereafter, on April 17, 2007, Plaintiff sustained a hand injury on the job.  (Def.'s 56.1 Stmt. ¶ 29; Pl.'s Resp. to Def.'s 56.1 Stmt. ¶ 29.)  The Office of the Supervisor ultimately issued a termination letter on April 19, 2007.  (Def.'s 56.1 Stmt. ¶ 19.)  Plaintiff agrees to having received this letter, but argues that it was sent by certified mail on April 23, 2007.  (Pl.'s Resp. to Def.'s 56.1 Stmt. ¶ 19.)

Plaintiff alleges that it was the April 17, 2007 hand injury and racial discrimination that caused his termination,

not issues with his attendance record.  Defendant maintains that it did not know of Plaintiff's April 17th injury until it received an accident report on April 25, 2007--after it had already issued Plaintiff's termination letter.  (Def.'s 56.1 Stmt. ¶ 31.)  Defendant admits to having received a document from Brookhaven Memorial Center on April 17, 2007 regarding a worker's compensation injury to Plaintiff, but Defendant's personnel thought it pertained to Plaintiff's January 2006 injury.  (Def.'s 56.1 Stmt. ¶ 35.)  In addition, Patricia Baehrle in Defendant's Department of Waste Management received a note from Dr. Rubin dated April 18, 2007 which stated that Plaintiff was under the doctor's care.  (Def.'s 56.1 Stmt. ¶ 38; Pl.'s Resp. to 56.1 Stmt. ¶ 38.)  Two days later, Ms. Baehrle indicated in an email that Plaintiff had handed her a doctor's note that morning.  (Def.'s 56.1 Stmt. ¶ 39.)  Plaintiff disputes Defendant's assertion that it did not know of Plaintiff's April 2007 hand injury.  (Pl.'s Add'l 56.1 Stmt. ¶¶ 13-19.)

In addition, Plaintiff further alleges that Defendant treated Caucasian employees more favorably than Plaintiff.  (Def.'s 56.1 Stmt. ¶ 23; Pl.'s Resp. to Def.'s 56.1 Stmt. ¶ 23.)  For example, he claims that, although Defendant recommended that Thomas Stretch be fired for absenteeism, Mr. Stretch was given the opportunity to quit first.  (Def.'s 56.1 Stmt. ¶ 23(a).)

According to Plaintiff, Mr. Hubbard held a meeting with Mr. Stretch in which he provided Mr. Stretch the opportunity to quit. (Pl.'s Resp. to Def.'s 56.1 Stmt. ¶ 23.) Defendant maintains that Mr. Stretch resigned on his own, without having been presented with the opportunity to do so. (Def.'s 56.1 Stmt. ¶ 22.)

Plaintiff also claims that William Walsh, Jr. was treated more favorably because Mr. Walsh missed work and slept on the job. (Def.'s 56.1 Stmt. ¶ 23(b); Pl.'s Resp. to Def.'s 56.1 Stmt. ¶ 23(b).) Defendant maintains, however, that Mr. Walsh was a full-time employee, who could not be fired without formal disciplinary charges and a hearing. (Def.'s 56.1 Stmt. ¶ 24.) Further, Plaintiff argues that Cathy Frick was treated more favorably than Plaintiff because she was fired from the Town's Animal Shelter but was hired full-time in the Department of Waste Management. (Def.'s 56.1 Stmt. ¶ 23(c).) Defendant disputes that Ms. Frick ever worked for the Town's Animal Shelter or that she was ever fired. (Def.'s 56.1 Stmt. ¶ 27.)

Finally, Plaintiff also brings a claim for defamation against Defendant, because, he says, Mr. Hubbard spoke negatively to other employees about him. (Def.'s 56.1 Stmt. ¶ 51.)

B.  Plaintiff's Prior Complaints

As a result of the aforementioned events, Plaintiff filed a complaint with the Workers Compensation Board on April 25, 2007.  (Def.'s 56.1 Stmt. ¶ 40.)  The Workers Compensation Board dismissed Plaintiff's complaint.  (Def.'s 56.1 Stmt. ¶ 43.)  Subsequently, Plaintiff unsuccessfully sought to obtain Workers Compensation benefits and filed complaints with the New York State Division of Human Rights and the Equal Employment Opportunity Commission ("EEOC").  (Def.'s 56.1 Stmt. ¶¶ 44-49.)  On May 28, 2008, the EEOC issued a right-to-sue letter.  (See Compl. ¶ 12.)

DISCUSSION

Defendant now moves for summary judgment on the following grounds: (1) Plaintiff cannot make out a prima facie case of discrimination under Title VII; (2) there were legitimate non-discriminatory reasons for Plaintiff's termination and Plaintiff has failed to provide any evidence that those reasons were pretextual; (3) Plaintiff cannot make out a prima facie case of discrimination under the ADA; (4) Plaintiff's sworn testimony before the Workers Compensation Board should result in summary judgment dismissing the Complaint; and (5) Plaintiff's pendent cause of action for defamation must be dismissed.

The Court will first address the legal standard of review on a motion for summary judgment before turning to the merits of Defendant's motion.

I. Summary Judgment Standard

Summary judgment is only appropriate where the moving party can demonstrate that there is "no genuine dispute as to any material fact" and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In considering this question, the Court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011) (internal citation omitted); see also FED. R. CIV. P. 56(c). "In assessing the record to determine whether there is a genuine issue to be tried . . . the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997). The burden of proving that there is no genuine issue of material fact rests with the moving party. Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994) (citing Heyman v. Com. & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975)). Once that burden is met, the non-moving party must "come forward with specific facts," LaBounty v. Coughlin,

137 F.3d 68, 73 (2d Cir. 1998), to demonstrate that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 218 (1986). "Mere conclusory allegations or denials will not suffice." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986). And "unsupported allegations do not create a material issue of fact." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000), superseded by statute on other grounds as stated in Ochei v. Coler/Goldwater Mem'l Hosp., 450 F. Supp. 2d 275, 282 (S.D.N.Y. 2006).

## II. Title VII

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Discrimination claims brought under Title VII are analyzed under the burden-shifting framework the Supreme Court established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). See Ruiz v. Cnty. of Rockland, 609 F.3d 486, 491 (2d Cir. 2010); Holcomb v. Iona Coll., 521 F.3d 130, 138 (2d Cir. 2008). That framework

requires a plaintiff to first establish a prima facie case of discrimination, after which the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Holcomb, 521 F.3d at 138. Once the defendant provides such a reason, "the burden shifts back to the plaintiff to demonstrate by competent evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Leibowitz v. Cornell Univ., 584 F.3d 487, 499 (2d Cir. 2009) (internal quotation marks and citations omitted).

A. Prima Facie Case of Discrimination

Defendant argues that Plaintiff has failed to establish a prima facie case of discrimination. The Court agrees in part.

To establish his prima facie case, Plaintiff must show that: "1) he belonged to a protected class; 2) he was qualified for the position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003). Defendant does not dispute that Plaintiff has satisfied the first three elements; therefore, the Court will limit its discussion to the fourth element.

The Second Circuit has held that an inference of discrimination may be derived from a variety of circumstances, including:

> the employer's continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position; or the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge; or the timing of the discharge.

Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994) (collecting cases); accord Leibowitz, 584 F.3d at 502. Here, the only evidence in the record that could give rise to an inference of racial discrimination in violation of Title VII is the potentially favorable treatment of others not in the protected group.[2]

"When considering whether a plaintiff has raised an inference of discrimination by showing that she was subjected to disparate treatment, we have said that the plaintiff must show she was 'similarly situated in all material respects' to the individuals with whom she seeks to compare herself." Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000) (quoting

_____

[2] Plaintiff also introduces evidence regarding the sequence of evidence and timing of the discharge, although this evidence pertains exclusively to Plaintiff's claim under the ADA.

<u>Shumway v. United Parcel Serv., Inc.</u>, 118 F.3d 60, 64 (2d Cir. 1997)). To satisfy the "in all material respects" requirement, "a plaintiff must show that her co-employees were subject to the same performance evaluation and discipline standards." <u>Id.</u> at 40. Additionally, the plaintiff must show that the comparator employee engaged in comparable conduct, although the conduct need not be identical. <u>Id.</u>

Typically, "[w]hether two employees are similarly situated ordinarily presents a question of fact for the jury." <u>Id.</u> at 39. "However, a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met." <u>Doner-Hedrick v. N.Y. Inst. of Tech.</u>, 874 F. Supp. 2d 227, 240 (S.D.N.Y. 2012) (internal quotation marks and citation omitted).

Initially, Plaintiff sought to compare himself to three employees, Ms. Catherine Frick, Mr. William Walsh, Jr., and Mr. Thomas Stretch. It appears, however, that Plaintiff has abandoned his claim that Ms. Frick is an appropriate comparator. (<u>See</u> Pl.'s Resp. to Def.'s 56.1 Stmt. ¶ 23 (discussing only Thomas Stretch and William Walsh); <u>id.</u> ¶¶ 26-27 (leaving blank any responses regarding Frick).)

Thus, the Court turns to whether Plaintiff has shown a prima facie case with respect to Mr. Walsh and Mr. Stretch. With respect to Mr. Walsh, Plaintiff has not done so. As noted

previously, "in all material respects" requires that the plaintiff and comparator be subject to the same discipline standards. See Graham, 230 F.3d at 40. Here, however, Mr. Walsh was a full-time employee, whereas Plaintiff was a part-time employee. (Diamonte Aff. ¶¶ 7-8.) Accordingly, the two were not subject to the same discipline standards. Specifically, Defendant could not terminate full-time employees without disciplinary charges and a hearing, whereas part-time employees could be terminated without such procedures. (Diamonte Aff. ¶¶ 7-8.)

Thus, Plaintiff has failed to establish a prima facie case in this respect.[3] See Doner-Hedrick, 874 F. Supp. 2d at 244 ("Freeman and Balk are not appropriate comparators given the remaining time on their employment contracts at the time of their separation from NYIT."); Risco v. McHugh, 868 F. Supp. 2d 75, 102 (S.D.N.Y. 2012) ("As a probationary employee, Risco was subject to being disciplined and even terminated in a more summary fashion and was therefore not similarly situated to her co-workers who were permanent employees."); Conway v. Microsoft Corp., 414 F. Supp. 2d 450, 465 (S.D.N.Y. 2006) (employees who

---

[3] Furthermore, Plaintiff seems to acknowledge that, to the extent there was any differential treatment, this may have been the result of nepotism rather than racial discrimination. (See Pl.'s Resp. to Def.'s 56.1 Stmt. ¶ 23(b).)

were subject to different workplace standards were not similarly situated).

With respect to Thomas Stretch, Plaintiff has offered only speculative conclusions. According to Plaintiff, Mr. Stretch was a part-time employee who, like Plaintiff, had been late or absent from work on several occasions. (See Pl.'s Resp. to Def.'s 56.1 Stmt. ¶¶ 21-23.) However, Plaintiff maintains that Defendant provided Mr. Strech with the opportunity to meet with Ed Hubbard, forewarned Stretch of his termination, and gave Stretch the opportunity to resign. (Pl.'s Resp. to Def.'s 56.1 Stmt. ¶¶ 21-23.) As discussed more fully below, Mr. Stretch disputes Plaintiff's version of events. Even assuming, though, that Plaintiff has shown a prima facie case in this respect, he has failed to otherwise establish a viable Title VII claim.

B. Burden-Shifting and Pretext

Where a plaintiff has set forth a prima facie case, the burden shifts back to the defendant to provide a legitimate reason for the plaintiff's termination. See supra pp. 9-10. Here, Defendant has presented extensive evidence that Plaintiff was fired for his absenteeism and latenesses, and not for a forbidden purpose. Thus, the presumption of discrimination drops, and Plaintiff again carries the burden. See Doner-Hedrick, 874 F. Supp. 2d at 240. Although Plaintiff attempts to show that Defendant's proffered legitimate reason for

termination was a pretext, he has not adequately done so, and his Title VII claim cannot survive a summary judgment motion.

"Pretext can be shown 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" Id. Plaintiff, however, must base his arguments on admissible evidence. See id. at 245 ("The problem is that plaintiff has offered no evidentiary support for a finding of pretext and her arguments are without merit."); Risco, 868 F. Supp. 2d at 98 (more than conclusory allegations are required to overcome summary judgment).

Here, Defendant has clearly carried its burden of demonstrating a legitimate, non-discriminatory reason for Plaintiff's termination. It is undisputed that Plaintiff had been late or absent from work on several occasions. See Conway, 414 F. Supp. 2d at 461 ("Demotion for inappropriate behavior disallowed under company policy is clearly a legitimate, nondiscriminatory business reason."). Specifically, Plaintiff explicitly acknowledges that he twice met with Mr. Hubbard to discuss his absences and latenesses and that he received the December 19, 2006 counseling memorandum informing him that these continued issues would result in his termination. (See Pl.'s Resp. to Def.'s 56.1 Stmt. ¶¶ 5-6, 8; Trent Dep., Cohen Aff. Ex. 1, at 27, 29-30, 32.) He further acknowledges that he left the

jobsite without permission on March 27, 2007 and March 30, 2007, causing him to be return from his lunch break late. (Pl.'s Resp. to Def.'s 56.1 Stmt. ¶¶ 12-15.) In fact, Plaintiff has admitted that he had other jobs that paid him more money, thus causing attendance issues. (Pl.'s Resp. to Def.'s 56.1 Stmt. ¶ 9; Trent Dep. at 33.) Plaintiff even testified to that effect to the Workers Compensation Board (Workers Comp. Tr., Cohen Aff. Ex. 3, at 35 ("Like I said I was only making $8.50 an hour. I have a family, kids and own a home, and $8.50 is not going to do nothing part-time. Some days I worked three days a week or do roofing business on the side with friends of mine.")). See Doner-Hedrick, 874 F. Supp. 2d at 245 ("Plaintiff's own theory of the reason for her termination refutes any discriminatory motive.").

In response to Defendant's overwhelming evidence, Plaintiff offers speculation. For example, Plaintiff asserts that at times he stayed late to make up for lost time and that his attendance issues improved. However, it remains undisputed that Plaintiff indeed had lateness and attendance issues, that he received a formal memorandum in this regard, and that twice in March 2007 he left the job site and/or returned late. (See Pl.'s Attendance Record, Cohen Reply Aff., Docket Entry 161, Ex. A.)

Moreover, Plaintiff maintains that Defendant provided Stretch with the opportunity to resign prior to termination, but Defendant's evidence makes clear that Stretch resigned completely on his own. Mr. Stetch provided deposition answers that he did not have any meeting prior to his termination. (Stretch Written Dep. Questions, Docket Entry 149-14, at 1.) He also stated that he was not informed that he was being terminated prior to actual termination and that he resigned on his own. (Stretch Written Dep. Questions at 2.) Hubbard also provided written deposition answers. While Hubbard does indicate that there may have been a meeting with Mr. Stretch prior to his termination, Hubbard definitively responded that he did not give Stretch the opportunity to resign. (Hubbard Written Dep. Questions at 2-3.)

Accordingly, Plaintiff has not overcome his burden, and Defendant's motion for summary judgment on Plaintiff's Title VII claim is GRANTED. See Desir v. Bd. of Co-op. Educ. Servs. (BOCES) Nassau Cnty., 803 F. Supp. 2d 168, 182-83 (E.D.N.Y. 2011) (defendant put forth sufficient evidence that plaintiff was terminated for performance reasons, and plaintiff could not show pretext through any admissible evidence); Stephen v. Brooklyn Hebrew Sch. for Special Children, 356 F. Supp. 2d 248, 260-61 (E.D.N.Y. 2005) (where there was undisputed evidence that plaintiff was terminated after her participation in a fight and

plaintiff's only evidence of pretext was inadmissible, Title VII claim was dismissed).

III. <u>ADA Claim</u>

Defendant also moves for summary judgment on Plaintiff's claim that Defendant terminated his position because of his April 2007 re-aggravated hand injury. Defendant argues that Plaintiff cannot maintain a claim under the ADA because Plaintiff's injury is not considered a disability under the ADA, he cannot establish that Defendant had notice of his disability, and because Plaintiff cannot demonstrate that Defendant's articulated reason for terminating him was pretextual. Even assuming that Plaintiff's injury is a disability under the ADA, the Court agrees with Defendant that Plaintiff has not carried his burden of showing pretext sufficient to overcome a motion for summary judgment.

Disparate treatment claims under the ADA, such as the one Plaintiff claims here, are subject to the same burden-shifting framework under <u>McDonell Douglas</u> as Title VII claims. <u>See,</u> <u>e.g.,</u> <u>Heyman v. Queens Vill. Comm. for Mental Health</u>, 198 F.3d 68, 72 (2d Cir. 1999). It is with that standard in mind that the Court will analyze Plaintiff's ADA claim. First, though, the parties have not been abundantly clear on the evidence pertaining to the ADA claim, as opposed to the Title VII claim, and a brief recitation of the evidence is in order.

Plaintiff maintains, and Defendant does not dispute, that Plaintiff suffered a hand injury, or re-aggravation of a hand injury on April 17, 2007. Additionally, it is not disputed that Plaintiff provided Defendant with a letter discussing his injury that day. However, Defendant and its personnel assert that they mistakenly believed that Plaintiff's letter regarding his April 2007 injury pertained only to his prior injury, and they did not realize that this was a new injury. Even Plaintiff, at times, has acknowledged that Defendant misinterpreted the letter and did not investigate the claim because they thought it pertained to the 2006 injury. (Pl.'s Resp. to Def.'s 56.1 Stmt. ¶ 35.) At other times, though, Plaintiff counters with evidence that Defendant may have known about the April 2007 injury prior to his termination. (Pl.'s Add'l 56.1 Stmt. ¶ 10 (discussing Pat Baehrle's question as to whether they could terminate Plaintiff if he was claiming injury); Baehrle Resp. to Written Questions, Docket Entry 149-13, at 1 (discussing her receipt of doctor's note on April 20, 2007).)

The Court questions whether Defendant indeed knew of Plaintiff's injury before his termination. Certainly, it was reasonable for Defendant to think, even if mistakenly, that Plaintiff's claims of injury pertained to his 2006 injury. See Graham, 230 F.3d at 44 ("The key question is whether it was

reasonable for the employer to rely on the test result in making its employment decision."); Workers Comp. Tr. at 13 (discussing the fact that doctor's note of April 18, 2007 does not state that the injury occurred on April 17, 2007).

In any event, Plaintiff's only evidence disputing Defendant's evidence of a legitimate, non-discriminatory reason is the temporal proximity of particular events and speculation. For example, Plaintiff's opposition to Defendant's motion for summary judgment proclaims that Plaintiff had a pending claim with the New York State Workers Compensation Board in Binghamton relating to his 2006 injury and that Plaintiff's probable success in that action prompted Defendant to fire him. (See Pl.'s Opp. Br., Docket Entry 157, at 6.) Plaintiff also asserts that, contrary to his December 6, 2007 testimony to the Workers Compensation Board, "[t]he timing of the suit for damages from the first incident, the mishandling of the records . . . , the signing of the CSEA Union Agreement, and even the medical records which show conflicting information, are all additional factors that overwhelmingly obviate the general findings of the Workers' Compensation Board in the instant case." (Pl.'s Opp. Br. at 8.)

Temporal proximity may be sufficient to show a prima facie case, but it is insufficient to demonstrate pretext. See Iverson v. Verizon Commc'ns, No. 08-CV-8873, 2009 WL 3334796, at

*5 (S.D.N.Y. Oct. 13, 2009) ("Iverson also claims that his termination must have been motivated by discrimination because it occurred near the time Verizon learned of his disability. Merely claiming temporal proximity between the disclosure of disability and termination, however, is not enough to show that Verizon's reasons for termination were a pretext for discrimination."); Forde v. Beth Israel Med. Center, 546 F. Supp. 2d 142, 152 (S.D.N.Y. 2008) ("While timing may be sufficient to establish an inference of discrimination, the close proximity of a termination to the plaintiff's announcement of her pregnancy alone is insufficient to demonstrate a pretext." (internal quotation marks and citation omitted)); Lanci v. Andersen, No. 96-CV-4009, 2000 WL 329226, at *6 (S.D.N.Y. Mar. 29, 2000) ("[A] 'suspicious' sequence of events does not necessary [sic] allow a plaintiff's ADA claim to survive a summary judgment motion.").

Accordingly, Defendant's motion for summary judgment on Plaintiff's ADA claim is GRANTED.

IV. Defamation

Finally, Defendant also seeks summary judgment on Plaintiff's claim of defamation. It is unclear on exactly what basis Plaintiff founds his defamation claim, but he apparently asserts that Hubbard defamed him by talking to Plaintiff's co-

workers about the kind of car that Plaintiff drove.[4] (Pl.'s Dep. Tr. at 89 (Hubbard "was always worried about what I drove to work, like Ed Hubbard mentioned something like the car I drove stuck out."); id. at 100-01 ("Q: What did he say to [Plaintiff's co-workers] about you that you believe was defamatory? A: Like what I drove to work. He was concerned about what I am driving, not my work duties, my work performance.").) The Court agrees with Defendant that Plaintiff's defamation claim must be dismissed.

"To succeed on his claims for defamation, [Plaintiff] must allege 1) a false statement, 2) that was published without privilege or authorization to a third party, 3) constituted fault . . . , and 4) either caused a special harm or constituted defamation per se." McNamee v. Clemens, 762 F. Supp. 2d 584, 599-600 (E.D.N.Y. 2011). Furthermore, to properly allege a claim for defamation, the complaint must set forth the exact words spoken. Roth v. United Fed'n of Teachers, 5 Misc. 3d 888, 894-95, 787 N.Y.S.2d 603 (Sup. Ct. Kings Cnty. 2004).

Here, Plaintiff has not come forward with sufficient evidence regarding the exact statement or statements that

---

[4] To the extent that Plaintiff's opposition brief seeks to add further allegations of defamation, Plaintiff cannot amend his Complaint in this manner. See Fadem v. Ford Motor Co., 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005) ("It is long-standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs.").

Plaintiff claims were defamatory.[5]   Even in his deposition,
Plaintiff paraphrased the alleged defamatory statements.   This
is insufficient.   See Roth, 5 Misc. 3d at 895 ("Dismissal is
required when the complaint paraphrases, rather than pleads with
particularity, the actual words used, such that the actual words
are not evident from the face of the complaint." (internal
quotation marks and citation omitted)).

Moreover, the Court finds that statements regarding
Plaintiff's car are not "reasonably susceptible to [a]
defamatory meaning." Dworin v. Deutsch, No. 06-CV-13265, 2008
WL 508019, at *3 (S.D.N.Y. Feb. 22, 2008) (internal quotation
marks omitted).   "A statement is defamatory if it would tend to
expose one to public hatred, shame, obloquy, odium, contempt,
ridicule, aversion, ostracism, degradation or disgrace." Stern
v. Cosby, 645 F. Supp. 2d 258, 272 (S.D.N.Y. 2009) (internal
quotation marks and citation omitted).   In making this
determination, the Court must look at the statement in the
overall context and accord it the meaning reasonably understood

---

[5] In fact, the only allegations of defamation are vague
references to Hubbard contained in documents to the EEOC and New
York State Division of Human Rights attached to the Complaint.
(See Compl. at 7, EEOC Form 5 ("The Town of Brookhaven
discriminated me by Defamation, color and by treating other
employees better than me."); Compl. at 9, New York State
Division of Human Rights Complaint Form ("Ed Hubbard is my Waste
Manager who discriminated [against] me after I mention[ed]
prejudice to him 6/7/06 and that's when all problem's [sic]
happen.  Defamation.  Termination . . .").)

by the average listener. Id.; see also McNamee, 762 F. Supp. 2d at 600. Here, it is not even clear exactly what Hubbard allegedly stated, but in any event, a comment about Plaintiff's vehicle can hardly be said to subject Plaintiff to public hatred, shame, or the like. See Parker v. Hujuelos, No. 90-CV-3046, 1991 WL 158976, at *3 (E.D.N.Y. July 15, 1991) ("Reporting that a person has requested a kiss or has 'sipped' a daiquiri, true or not true, simply does not subject them to the scorn of the average reader of such an account.").

Accordingly, Defendant's motion for summary judgment on Plaintiff's defamation claim is GRANTED.

CONCLUSION

For the foregoing reasons, Defendant's motion is GRANTED, and Plaintiff's Complaint is DISMISSED WITH PREJUDICE. Counsel for Defendant is ORDERED to serve a copy of this Memorandum and Order on the pro se Plaintiff and to file proof of service via ECF within seven (7) days of the date of this Memorandum and Order.

The Clerk of the Court is directed to enter judgment consistent with this Memorandum and Order and to mark this matter CLOSED.

SO ORDERED

Dated: August __15__, 2013 /s/ JOANNA SEYBERT_____
   Central Islip, New York Joanna Seybert, U.S.D.J.

24